UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

CALVIN WAITE,

                Plaintiff,

        - against -

HONORABLE ERIC GONZALEZ, Kings
County District Attorney; ADAS JANE DOES
1 THROUGH 5 and ADAS JOHN DOES 6
THROUGH 10, Individually and as Agents of
the New York District Attorney's Office, Kings
County; THE NEW YORK CITY POLICE
DEPARTMENT; THE 84th POLICE
PRECINCT OF THE CITY OF NEW YORK;
THE CITY OF NEW YORK; YADIRA
NUNEZ, Individually, and as the Parent and
Legal Guardian of S.N., a Minor, and as an
Agent of the District Attorney's Office, Kings
County; CHARLES NUNEZ; AYANNA
SABB; and JANE DOES 11 THROUGH 15
and JOHN DOES 16 THROUGH 20,
Individually and as Agents of the New York
City Police Department; and THE OFFICE OF
COURT ADMINISTRATION,

                Defendants.

--------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-2506 (PKC) (RLM)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Calvin Waite brings this action alleging wrongdoing by both private witnesses

and government officials arising from their various roles in securing two related indictments

against him.  (Complaint ("Compl."), Dkt. 1.)  Before the Court are Defendants' motions to dismiss

this matter for lack of subject-matter jurisdiction and for failure to state a claim upon which relief

may be granted.  (*See* Defendants' various Motions to Dismiss and Replies, Dkts. 41–47.)  For the

1

reasons set forth herein, because Plaintiff has not plausibly alleged any of his claims, Defendants'

motions are granted.  This action is hereby terminated.

## BACKGROUND

## I.    Relevant Facts[1]

On June 6, 2015, Plaintiff went to 1041 Bushwick Avenue, Apartment 1-2, Brooklyn, New

York, 11221, to visit his wife and son.  (Dkt. 1, ¶ 64.)  Before visiting his wife and son,[2] Plaintiff

went to the apartment of Yadira Nunez in the same building, and at some point, fell asleep on Ms.

Nunez's living room couch.[3]  (*Id.* ¶ 65.)  While Plaintiff was asleep, S.N., Ms. Nunez's daughter,

"tripped and fell on the Plaintiff's lap," which caused Plaintiff "excruciating pain" that made him

"jump[] up suddenly."  (*Id.* ¶¶ 65–66.)  When Plaintiff jumped up, he knocked both himself and

S.N. over.  (*Id.* ¶ 67.)  Hearing the commotion, Defendant Charles Nunez, S.N.'s brother, came

out of his bedroom "to find Plaintiff raising up from the area where he and S.N. had fallen."  (*Id.*

¶ 68.)  Charles Nunez "immediately inquired what was going on."  (*Id.*)  Plaintiff explained what

had happened and, after some time, left to visit his wife and son.  (*Id.* ¶ 69.)  At that point, Charles

---

[1] For the purposes of this Memorandum & Order, the Court assumes the truth of the non-conclusory, factual allegations contained within Plaintiff's Complaint.  *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[2] Although the Complaint does not expressly state this, as discussed *infra*, the Court infers it from other allegations in the Complaint.

[3] The Complaint does not explain the relationship between Plaintiff and Yadira Nunez, or why Plaintiff went to Ms. Nunez's apartment when he was ostensibly going to the building to visit his wife and son.  The Complaint, however, seems to indicate that Plaintiff's wife and son live upstairs from Ms. Nunez in the same building.  (Dkt. 1, ¶ 69 (stating that "after some time, the Plaintiff went upstairs to the apartment where his wife and son lived").)  In addition, evidence in the record suggests that Ms. Nunez might be Plaintiff's sister-in-law.  (*See* Brooklyn Hospital Center Medical Report, dated July 28, 2015 ("Medical Report"), Exhibit I, *id.* at ECF 281.)  Note that citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

Nunez called his girlfriend, Defendant Ayanna Sabb, to tell her that he had "observed the Plaintiff on top of his sister, with her legs up and the Plaintiff . . . rubbing penis on her private area with his clothes on." (*Id.* ¶ 70.) Ms. Sabb drove to the apartment from New Jersey, spoke with S.N., and then "called the police and reported the allegations that Charles [Nunez] [had] made to [Ms. Sabb] to the police." (*Id.* ¶ 71.)

At around 6:15 pm that night, Plaintiff was arrested by New York City Police Department ("NYPD") officers, and charged with numerous offenses, including First Degree Sexual Assault. (*Id.* ¶¶ 72, 76.) S.N. was brought to Woodhull Hospital, where, according to a medical report, she denied "any form" of vaginal or anal penetration, oral sex, or "instrumentation." (*Id.* ¶ 74.) Neither the NYPD's Complaint Follow-Up Information form nor a follow-up medical assessment by Brooklyn Hospital Center indicated that Plaintiff had penetrated S.N., and the District Attorney's Office never "turn[ed] over any evidence showing or even tending to show that the Plaintiff [had] anally or vaginally penetrated the complaining witness."[4] (*Id.* ¶¶ 80–82; *see also* Medical Report, Exhibit I, Dkt. 49-1, at ECF 280–82.)

Plaintiff was indicted on November 10, 2015 (Indictment #04596-2015) for two counts each of Sexual Abuse in the First Degree, Sexual Abuse in the Second Degree, and Endangering the Welfare of a Child. (Dkt. 1, ¶¶ 4, 6.) These charges stemmed from two separate incidents: (1) the aforementioned June 6, 2015 incident; and (2) an April 15, 2015 incident, during which it was alleged that "Calvin Waite touched the Complaining witness' Vagina [sic] over the clothes while watching TV." (*Id.* ¶ 5.) It appears that this indictment was superseded by the 2017 indictment discussed next.

---

[4] References to "complaining witness" herein refer to S.N.

On November 1, 2017, a superseding indictment (Indictment #8247-2017) was returned against Plaintiff.  This indictment charged Plaintiff with three counts each of Criminal Sexual Act in the First Degree, Sexual Misconduct, and Endangering the Welfare of a Child, as well as Six Counts of Sexual Abuse in the First Degree and Six Counts of Sexual Abuse in the Second Degree. (*Id.* ¶ 9.)  This time, the charges stemmed from (1) the June 6, 2015 incident, as well as other alleged sexual misconduct by Plaintiff against S. N.: (2) two separate occasions, on April 13 and 19, 2015; and (3) two occasions between April 20 and 26, 2015.  (*Id.* ¶ 10.)[5]

Plaintiff asserts that "the Defendant"[6] elicited "fabricated testimony" from S. N. to support the more serious charges in the second indictment.  (*See, e.g.*, *id.* ¶¶ 85, 86 ("Defendant took advantage of their role as advocate and corrupted the information" from S.N., a "highly suggestible" 13-year-old.).)  Plaintiff further asserts that the second indictment was obtained in order to "salvage [the prosecutors'] case" before it was foreclosed by New York State's "Speedy Trial" Law, Criminal Procedure Law Section 30.30.  (*Id.* ¶¶ 85–87 (N.Y. CRIM. PROC. LAW § 30.30).)

Plaintiff alleges that Defendants conspired to maliciously prosecute him and that they "redacted, altered, amended, and withheld" evidence "to facilitate the malicious prosecution."  (*Id.* ¶¶ 95, 98–99.)  Plaintiff also alleges that Defendants made false representations to the state court judge "only to have the Detective testify that he did not give the evidence that Justice [Deborah] Dowling chose to admit."  (*Id.* ¶¶ 99–100.)  Justice Dowling allegedly "punished several" of the experts and attorneys appointed to support Plaintiff's defense, causing Plaintiff's trial counsel to

---

[5] These charges were more serious than the ones in the 2015 indictment and included allegations of vaginal and anal penetration by Plaintiff.

[6] The Court assumes Plaintiff is referring to the individual District Attorney's Office Defendants.

"quit and refuse[] to do the second trial" and denied Plaintiff's counsel's request at the first trial "to call members of the King's [sic] County District Attorney's Office to inquire about the inconsistent evidence presented to the jury." (*Id.* ¶¶ 89, 105–08.)

Plaintiff alleges that, as a result of this conspiracy, he had to face a trial that "would not have taken place as this case would have been dismissed."[7] (*Id.* ¶ 90.) He further claims that because of Defendants' wrongdoing, he was "indicated by ACS"[8] and lost custody of his child. (*Id.* ¶¶ 96, 97.) Plaintiff also alleges that he suffered particular stigma and reputational harm because "a false claim of forced anal sex against a child is especially repugnant in the Jamaican community" of which he is a member. (*Id.* ¶ 92.) He also claims that he was forced to attend counseling sessions with "rapists," and was denied a position as a private security guard in Dubai after a background check unearthed his two indictments. (*Id.* ¶¶ 92–93, 100–04.)

## II.    Plaintiff's Complaint

In his Complaint in this case, Plaintiff asserts the following claims against all Defendants: (1) 42 U.S.C. Section 1983 (First Cause of Action) (*id.* ¶¶ 153–65); (2) municipal liability (Second Cause of Action) (*id.* ¶¶ 166–76); (3) malicious prosecution (Eighth Cause of Action) (*id.* ¶¶ 198–205); (4) harassment (Ninth Cause of Action) (*id.* ¶¶ 206–13); (5) failure to properly investigate (Tenth Cause of Action) (*id.* ¶¶ 214–18); (6) punitive damages (Eleventh Cause of Action) (*id.* ¶¶

---

[7] As Plaintiff notes, the case was ultimately dismissed prior to the second trial. (Dkt. 1, ¶ 112.) According to an affidavit signed by Ms. Nunez and submitted as part of Defendants' motion briefing, Plaintiff's criminal case "was dismissed due to a mistrial," but "the case has been sealed," so such records are unavailable without a subpoena. (Dkt. 41-1, at ECF 3–4.)

[8] The Court infers that "ACS" refers to New York City Administration for Children's Services, the agency that "protects and promotes safety and well-being of New York City's children and families by providing child welfare, juvenile justice, and early care and education services." https://www.nyc.gov/site/acs/about/about.page (last visited 3/29/2023). "Indicated means that: [Child Protective Services] found enough evidence to support the claim that a child has been abused or neglected." https://www.nyc.gov/site/acs/child-welfare/parents-guide-child-abuse-investigation.page (last visited 3/29/2023).

219–25); (7) fraud (Twelfth Cause of Action) (*id.* ¶¶ 226–31); (8) legal fees, costs, and disbursements (Thirteenth Cause of Action) (*id.* ¶¶ 232–39); and (8) "acting in concert/conspiracy" (Fourteenth Cause of Action) (*id.* ¶¶ 238–48).   No specific Defendants are named in the Third through Seventh Causes of Action, which assert claims, respectively, for intentional infliction of emotional distress; negligent infliction of emotional distress; defamation/slander/libel; and attorney's fees. (*Id.* at ECF 27–29.)   Plaintiff seeks damages, attorney's fees, and injunctive relief, including "the removal of the indicated status ACS found against his name and an injunction against further unlawful acts." (*Id.* ¶¶ 113–17, 143 (citing Title VII of the Civil Rights Act of 1964, New York City and State Human Rights Laws, "the ADEA, the ADA, the FMLA, 42 U.S.C. § 1981").)

## III.   Procedural History

On May 5, 2021, Plaintiff commenced this action alleging civil rights violations and state law claims against virtually everyone involved in procuring his 2015 and 2017 indictments, namely: the City of New York, Kings County District Attorney ("DA") Eric Gonzalez, Assistant District Attorneys ("ADAs") Jane Does 1–5 and John Does 6–10, the NYPD, the NYPD's 84th Police Precinct, and NYPD Officers Jane Does 11–15 and John Does 16–20 (collectively, the "City Defendants");[9] Justice Deborah A. Dowling, in her individual capacity and "as an agent of the

---

[9] City Defendants' pre-motion conference ("PMC") in anticipation of a motion to dismiss (Dkt. 13) and motion (Dkt. 44) are filed only on behalf of DA Gonzalez and the City of New York on grounds that they "are the sole municipal actors identified and properly served in this matter." (*Id.* at 1.)   Even so, the City Defendants and Plaintiff do brief issues regarding the alleged involvement of the other City Defendants (i.e., the NYPD, the 84th Precinct, and the individual, unidentified John and Jane Doe police officers and assistant district attorneys), presumably because they are relevant to Plaintiff's claims against the other Defendants.   Therefore, even as the Court orders Plaintiff to show cause why the case should not be dismissed as to the individual police officer Defendants under Federal Rule of Civil Procedure 4(m), it also assesses the sufficiency of Plaintiff's claims as to those Defendants for purposes of determining whether

Office of Court Administration," and the New York State Office of Court Administration (collectively, the "OCA Defendants"); and Yadira Nunez, Charles Nunez, and Ayanna Sabb, individually and as "agent[s] . . . of [the] District Attorney's Office, Kings County" (collectively, the "Nunez Defendants").  (*Id.* ¶¶ 52–62.)

In July 2021, DA Gonzalez, the City of New York, the Office of Court Administration, and Yadira and Charles Nunez filed motions for a pre-motion conference in anticipation of filing motions to dismiss.  (Dkts. 11–13.)[10]  The Court initially granted Defendants' requests to file motions without convening a pre-motion conference, but in response to a subsequent motion for a PMC filed on behalf of Justice Dowling on August 6, 2021 (Dkt. 17), it reconsidered and stayed discovery pending resolution of the anticipated motions, "given the strong showing by Defendants that Plaintiff's claims may not be meritorious and the limited risk of prejudice to Plaintiff of such a stay."  (*See* 8/10/2021 Docket Entry (citing *Miller v. Brightstar Asia, Ltd.*, No. 20-CV-4849 (GBD) (JLC), 2020 WL 7483945, at *2 (S.D.N.Y. Dec. 21, 2020)).)  On September 9, 2021, the date of the scheduled pre-motion conference for all parties, Plaintiff filed a notice of consent to change attorney (Dkt. 19), and the Court directed Plaintiff's new counsel to inform the Court by October 12, 2021 whether he intended to amend the complaint in light of the proposed motions to dismiss (9/9/2021 Docket Entry).  In response, Plaintiff's counsel stipulated to the dismissal, with prejudice, of Justice Dowling.  (Dkt. 23.)  Plaintiff's counsel eventually confirmed that Plaintiff

---

Plaintiff's Complaint should survive Defendants' motions to dismiss.  Finally, Plaintiff does not need to show cause regarding service of the individual ADA Defendants because the Court dismisses the claims against the individual ADA Defendants under Federal Rule of Civil Procedure 12(b)(1).  *See Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000) (explaining that "failure of subject matter jurisdiction…may be raised at ay time by a party or by the court *sua sponte*.  If subject matter jurisdiction is lacking, the action must be dismissed.").

[10] Although Ms. Sabb is not originally referenced in the Nunez Defendants' PMC, the Nunez Defendants' motion to dismiss is filed on behalf of her along with Yadira and Charles Nunez.  (*See* Dkts. 12, 41-2.)

would not further amend the Complaint.  (Dkts. 25, 27.)  The Nunez and City Defendants then renewed their requests for a pre-motion conference seeking leave to file a motion to dismiss (Dkts. 24, 26), and the Court denied the pre-motion conference as unnecessary and ordered the Parties to submit a joint proposed briefing schedule.  (10/26/2021 Docket Entry.)

On November 27, 2021, the Court approved a proposed briefing schedule that would result in fully briefed motions to dismiss by February 28, 2022.  (11/27/2021 Docket Entry.)  On January 14, 2022, the Nunez, City and OCA Defendants served their motions to dismiss on Plaintiff.  (Dkts. 30, 32, 33).  Over the objection of the Nunez Defendants (Dkts. 37, 39), the Court granted Plaintiff two extensions of time to file Plaintiff's opposition (Dkts. 36, 38), and admonished Plaintiff's counsel "that any future failure to meet a court-imposed deadline or to timely seek an extension from the Court may result in Plaintiff's filing being barred."  (3/9/2022 Docket Entry.)  On April 4, 2022, the motions to dismiss were fully briefed by all parties.[11]

In his opposition brief, Plaintiff consented to the dismissal of OCA from this action, as "OCA was sued merely in its capacity" as the employer of Justice Jane Dowling.  (Pl.'s Aff., Dkt. 48, at 2:5–8.)  Therefore, the instant Memorandum & Order pertains only to the City and Nunez Defendants' motions to dismiss.

## LEGAL STANDARDS

### I.  Rule 12(b)(1)

---

[11] (*See* Nunez Defendants' Motion to Dismiss ("Nunez Motion"), Dkt. 41; Reply to Plaintiff's Opposition ("Nunez Reply"), Dkt. 42; City Defendants' Motion to Dismiss ("City Motion"), Dkt. 44; Reply to Plaintiff's Opposition ("City Reply"), Dkt. 45; OCA Defendants' Motion to Dismiss ("OCA Motion"), Dkt. 47; Plaintiff's Opposition to the Motions to Dismiss ("Opposition Brief"), Dkt. 49; Affidavit in Opposition ("Pl.'s Aff."), Dkt. 48.)

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper "when the district court lacks the statutory or constitutional power to adjudicate it." *Allen v. Mattingly*, 478 F. App'x. 712, 713 (2d Cir. 2012) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). 28 U.S.C. Section 1331 provides federal district courts with "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States," while 28 U.S.C. Section 1332 grants federal jurisdiction where the defendants are of diverse citizenship and the amount in controversy exceeds $75,000. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F. App'x. 24, 27 (2d Cir. 2011). A district court "cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction." *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996) (citing *Cushing v. Moore*, 970 F.2d 1103, 1106 (2d Cir. 1992)); *see also Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017) ("[A] district court cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction. . . . It follows that when a district court correctly dismisses all federal claims for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the district court is thereby precluded from exercising supplemental jurisdiction over related state-law claims.") (quotation marks and citations omitted). However, "[w]hen a district court dismisses, pursuant to Rule 12(b)(6), all claims over which it properly has original subject-matter jurisdiction, the district court may still, under 28 U.S.C. § 1367(c), exercise its discretion to retain supplemental jurisdiction over related state-law claims." *Cohen*, 873 F.3d at 399.

## II.    Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim for relief pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Hogan*, 738 F.3d at 514. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 729–30 (2d Cir. 2013). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). In considering a motion to dismiss for failure to state a claim, courts "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guar. Corp.*, 712 F.3d at 717 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks omitted)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Pension Benefit Guar. Corp.*, 712 F.3d at 717 (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

### I.  The Court's Consideration of Extrinsic Documents Appended to Plaintiff's Opposition

Plaintiff appends 284 pages of exhibits to his Memorandum of Law in Opposition to the Motions to Dismiss ("Pl.'s Opp" or "Opposition Brief"), including the state court indictments against Plaintiff, trial transcripts and text message exhibits from the underlying trial, ambulance reports, and medical records—all of which he asks the Court to consider as attachments to the Complaint.  (Pl.'s Opp., Dkt. 49, at ECF 3–4 ("Plaintiff requests this Court to consider all documents attached to the complaint . . . incorporate them by reference and take judicial notice of the same in reaching its decision. . . . It is submitted that the documents, pleadings, and exhibits annexed to the motion papers, when considered, makes it clear that the only outcome that is warranted here is a decision denying Defendants [sic] instant motions, and granting such and further relief as the court deems just and appropriate.").)  The Court declines to consider any of these documents, except for the Brooklyn Hospital Center medical records and the underlying 2015 and 2017 indictments, all of which are referenced in the Complaint and which the Court finds are integral to it.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco*, 622 F.3d at 111 (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  However, "[a] mere passing reference or even references . . . to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself."  *QED, LLC v. Faber Daeufer & Itrato, P.C.*, No. 20-CV-2767 (VEC), 2021 WL 707073, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *Williams v. Time Warner, Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011)); *Aguirre v. City of New York*, No. 15-CV-6043 (PKC), 2017 WL 4236552, at *5 (E.D.N.Y. Sept. 22, 2017) (finding that because "none of the facts in [an attachment to Plaintiff's opposition brief] were explicitly asserted in Plaintiff's

[complaint] . . . it would be improper for the Court to consider them for the purpose of a motion to dismiss.")

"Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint[.]" *DiFolco*, 622 F.3d at 111 (internal quotation marks and citations omitted). A district court can properly consider "documents plaintiffs had either in their possession or had knowledge of and upon which they relied in bringing suit" . . . but the "plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers*, 282 F.3d at 153. *See also San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.,* 75 F.3d 801, 808–09 (2d Cir. 1996) (permitting consideration of full text of documents partially quoted in complaint); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995) (finding contract between parties "integral" to complaint alleging breach and may be considered on a motion to dismiss)*; Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir. 1991) (allowing consideration of documents relied upon by plaintiff in drafting the complaint and integral to the complaint). "[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

Here, Plaintiff appends nine exhibits to his Opposition Brief. (Dkt. 49-1, Exhibits A–I.) None of these documents are incorporated into Plaintiff's Complaint because they are not specifically referenced in any way in the Complaint. (*See generally* Dkt. 1.) Only two could be considered "integral" to Plaintiff's Complaint: Exhibit G, which contains the 2015 and 2017 indictments quoted and referenced extensively in the Complaint (Dkt. 49-1, at ECF 266–76); and

Exhibit I, referring to the medical record of S.N.'s visit to the Brooklyn Hospital Center in the aftermath of the June 6, 2015 incident that first resulted in Plaintiff's arrest (*id.*, at ECF 280–84; referenced in the Complaint, Dkt. 1, at ¶¶ 78, 80).  The Court finds that Plaintiff heavily relied on the terms and effect of these documents in bringing the suit, and thus they are integral to the Complaint.

Plaintiff attaches what appear to be excerpts of court transcripts as Exhibits A and C to his Opposition Brief without any explanation or introduction.  (Dkt. 49-1 at ECF 1–127, 235–59.)  The Court presumes they are from Plaintiff's underlying state criminal proceeding, although Plaintiff does not expressly say so anywhere in his brief.  (*See generally* Dkt. 49.)  Plaintiff's Complaint makes no reference to these documents or their contents.  To the extent that the Complaint does refer to the state court trial, it does so only in general and frequently conclusory terms that do not incorporate or even point to anything specific in the transcripts.[12]  Moreover, even after carefully reviewing these transcripts, it is not clear to the Court how they could be considered "integral" to the Complaint.  It is not the Court's role to divine Plaintiff's best arguments or guess at their relationship to Plaintiff's proffered extrinsic documents.  The Court therefore declines to consider Exhibits A and C because they're neither incorporated into Plaintiff's Complaint nor integral to it. *See Kaible v. U.S. Comput. Grp., Inc.*, 27 F. Supp. 2d 373, 376 (E.D.N.Y. 1998) (deciding not to consider transcript excerpts attached to a motion to dismiss since they were not attached to the

---

[12] For example: "The evidence ultimately admitted at trial all concerned the events that occurred on June 6, 2015 and was not in accordance with the allegations contained in" the indictment (Dkt. 1, ¶ 13); "The Judge at trial refused to allow the Defendant to call the Prosecutor who was named as an outcry witness to the stand and allowed the same prosecutor to conduct a direct examination about the very outcry that the Defendants maintained the complainant made to said prosecutor" (*id.* ¶ 35); "The entire trial was biased and was conducted in a way that would most likely ensure a conviction without regard for the Plaintiff's consistent claims that he was innocent and in violation of the due process rights the Plaintiff enjoys" (*id.* ¶ 36).

complaint or incorporated by reference); *Hutchins v. Solomon*, No. 16-CV-10029 (KMK), 2018 WL 4757970, at *9 (S.D.N.Y. Sept. 29, 2018) (declining to consider transcripts appended as exhibits where "most of Plaintiff's references to [the] testimony are general and do not point to any specific portion of the grand jury or trial transcript").

Finally, Plaintiff also asks the Court to take judicial notice of the exhibits appended to his Opposition Brief.  (Dkt. 49, at ECF 3.)  Although Plaintiff is correct that "judicial notice can also be taken, as to matters of public record" (Dkt. 49, at 3–4), such appended documents are generally considered "only to determine what the documents stated, and not to prove the truth of their contents."  *S.E.C. v. Medallion Fin. Corp.*, No. 21-CV-11125 (LAK), 2022 WL 3043224, at *2 (S.D.N.Y. Aug. 2, 2022) (emphasis in original); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("Courts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (as applied in *Adams v. Town of Clarkstown Police Dept.*, No. 21-CV-11062 (CS), 2023 WL 1109647, at *5 (S.D.N.Y. Jan. 30, 2023)).  Thus, even if the Court were to take judicial notice of Plaintiff's state court records that the Court does not find to be incorporated or integral to his Complaint, such as his trial transcripts, the Court would not consider them for the truth of their contents; rather, only for the fact of their existence. Accordingly, the Court finds that they would not change the Court's analysis as to the merits of Defendants' motions.

As for the remaining exhibits, Exhibits D (*id.* at ECF 260–61 (an ambulance call report)); E (*id.* at ECF 262–63 (a screenshot of a text conversation involving Plaintiff)); F (*id.* at ECF 264–65 (same)); and H (*id.* at ECF 277–79 (containing an NYPD Detective's statement)) are not mentioned anywhere in the Complaint nor does the Court find that Plaintiff relied on the

documents in any way in bringing suit.  Thus, Exhibits D, E, F, and H are neither incorporated nor integrated into Plaintiff's Complaint and the Court declines to consider them on this motion to dismiss.

## II.   The City Defendants

### A.  The NYPD and the 84th Precinct are Non-Suable Entities

The New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for violation of any law shall be brought in the name of the City of New York and not that of any agency except where otherwise provided by law."  N.Y. City Charter Ch. 17, § 396. The NYPD is an organizational subdivision of the City of New York and as such is not a suable entity.  *See, e.g.*, *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("[The plaintiff] sued the City of New York and the NYPD separately.  The district court correctly noted that the NYPD is a non-suable agency of the City."); *Antonetti v. City of New York*, No. 20-CV-5109 (BMC) (JRC), 2022 WL 1105172, at *2 (E.D.N.Y. Apr. 13, 2022) (dismissing claims against NYPD 103rd Precinct pursuant to Section 396); *Salaam v. City of New York*, No. 21-CV-3172 (EK) (LB), 2021 WL 3472660, at *1 (E.D.N.Y. Aug. 6, 2021); *Wingate v. City of New York*, No. 08-CV-217 (ARR), 2008 WL 203313, at *2 (E.D.N.Y. Jan. 23, 2008).  Therefore, all of Plaintiffs' claims against the New York City Police Department and the 84th Precinct are dismissed with prejudice pursuant to Rule 12(b)(1).

### B.  The District Attorney Defendants are Absolutely Immune From the Claims Alleged by Plaintiff

The City Defendants contend that the Kings County District Attorney Eric Gonzalez and Assistant District Attorneys Jane Does 1–5 and John Does 6–10 (the "District Attorney Defendants") are all entitled to absolute immunity from suit.  (Dkt. 44, at 9–10.)  Plaintiff only directly addresses that argument once, in his Opposition Affidavit, saying that these Defendants

"cannot claim immunity for the acts complained of herein fall squarely outside of the scope of any power and authority that Defendants are empowered to exercise."  (Dkt. 48, at ECF 3–4.) Plaintiff's Complaint, though light on details, is construed by the Court to allege that the Defendants from the Kings County District Attorney's Office failed to sufficiently investigate the complaint before bringing a criminal case; and then privately interviewed and "coerced" the victim of the alleged crime, a minor, and secured a second indictment to circumvent New York's "Speedy Trial" law, on the basis of new allegations made by the victim at that interview.  (Dkt. 1, ¶¶ 30– 34, 82–87).[13]

1. Legal Standards

While "prosecutors are entitled to absolute immunity for conduct 'intimately associated with the judicial phase of the criminal process,'" *Conte v. County of Nassau*, No. 6-CV-4746 (JFB) (ETB), 2008 WL 905879, at *23 (E.D.N.Y. Mar. 31, 2008) (quoting *Fielding v. Tollaksen*, 257 F. App'x 400, 401 (2d Cir. 2007)), "actions taken as an investigator enjoy only qualified immunity." *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000).  "Although all investigative activity could be considered in some sense to be 'prepar[ation] for the initiation of judicial proceedings,' the Supreme Court has sought to draw a line between those preparatory steps a prosecutor takes to be an effective advocate of a case already assembled and those investigative steps taken to gather evidence." *Ortiz v. Case*, 782 F. App'x 65, 67 (2d Cir. 2019) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  "The Supreme Court has identified 'evaluating evidence and interviewing witnesses' as falling on the absolute immunity side of the line." *Smith v. Garretto*,

---

[13] Because the Court dismisses the individual ADA Defendants pursuant to Federal Rule of Civil Procedure 12(b)(1), Plaintiff is not required to show cause as to why they should not be dismissed because they have not been properly served as required by Federal Rule of Civil Procedure 4(m).

147 F.3d 91, 94 (2d Cir. 1998) (quoting *Buckley*, 509 U.S. at 273). "While the party claiming absolute immunity bears the burden of establishing its applicability, once a court determines that absolute immunity applies, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused." *Byrne v. City of N.Y.*, 736 F. App'x 263, 264–65 (2d Cir. 2018) (citations omitted).

2. <u>Analysis</u>

Here, the question is whether the District Attorney Defendants are entitled to absolute immunity with respect to Plaintiff's claims that they failed to investigate and that they fabricated evidence. The Court finds that they are.

"The decision whether to bring charges—and even the decision to bring charges in the absence of adequate evidence—falls squarely within a prosecutor's role as advocate and, therefore, is protected by absolute immunity." *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503–04 (2d Cir. 2004). Thus, "[c]ourts within the Second Circuit have consistently found that a prosecutor's failure to sufficiently investigate a case post-arrest is protected by absolute immunity." *Soley v. Cnty. of Nassau*, No. 18-CV-377 (ARR) (SJB), 2022 WL 2954055, at *5–6 (E.D.N.Y. July 26, 2022) (collecting cases). It is therefore clear that the District Attorney Defendants are entitled to absolute immunity with respect to Plaintiff's allegation that they prosecuted without sufficiently investigating the basis of their prosecution against Plaintiff.

Plaintiff's claim that the District Attorney Defendants coerced "fabricated testimony" from S.N. in support of the second indictment similarly fails because these Defendants clearly performed this alleged misconduct in their advocacy rather than investigative role. *See Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (finding absolute immunity protects a prosecutor even for "allegedly conspiring to present false evidence at a criminal trial");; *Flores v. Levy*, 2008 WL

4394681, at *14 (E.D.N.Y. Sept. 23, 2008) (finding that "[i]t is clear that defendant prosecutors'

decision to seek a second indictment with the additional charge . . . as well as any alleged attempt

to elicit false testimony from a witness, would be protected by absolute immunity"); *Buari v. City*

*of New York*, 530 F. Supp. 3d 356, 380 (S.D.N.Y. 2021) (finding that assistant district attorney

accused of inducing witnesses to falsely implicate plaintiff is protected by absolute immunity)

(collecting cases).  Notably, in *Dory*, the Second Circuit rejected the precise argument Plaintiff

makes: "The fact that such a conspiracy [to present false evidence] is certainly not something that

is properly within the role of a prosecutor is immaterial, because the immunity attaches to his

function, not to the manner in which he performed it."  *Dory*, 25 F.3d at 83 (internal citations and

emphasis omitted).

Accordingly, the District Attorney Defendants are absolutely immune from suit as to all of

Plaintiffs' claims against them, and those claims must be dismissed pursuant to Rule 12(b)(1).[14]

### C. Plaintiff's Federal Claims as to the City of New York and NYPD Officer Defendants are Insufficiently Pled[15]

---

[14] Furthermore, with respect to DA Gonzalez, Plaintiff fails to allege the DA's personal involvement in any misconduct in either his Complaint or his Opposition Brief.  "It is well settled in the [Second Circuit] that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted).  A supervisory official may be "personally involved in a constitutional deprivation" where he fails to remedy the wrong after learning about it, where he creates a policy or custom that gives rise to unconstitutional practices or allows it to persist, through grossly negligent management of subordinates, and via deliberate indifference or gross negligence to unconstitutional practices.  *Wright*, 21 F.3d at 501.  Here, Plaintiff alleges no facts establishing that DA Gonzalez engaged in any of these acts or omissions, and thus Plaintiff has failed to allege a supervisory liability as to DA Gonzalez. This provides another ground for dismissing all claims against DA Gonzalez.  (*See generally*, Dkts. 1, 49.)

[15] Counsel for the City Defendants claims that Plaintiff has failed to properly serve the individual City Defendants and that they have not appeared, and Plaintiff does not argue the point. (*See* Dkt. 44, at 1.)  However, the Court analyzes Plaintiff's claims as to the individual City Defendants as part of its analysis of whether Plaintiff has sufficiently alleged any constitutional violation to support his *Monell* claims.  Further, although the Court finds that Plaintiff's claims

Plaintiff asserts four claims that the Court construes as federal causes of action: (1) 42 U.S.C. § 1983 (Count 1); (2) Municipal Liability (Count 2); (3) "Malicious Prosecution" (Count 8); and (4) "Conspiracy" (Count 14).  (Dkt. 1, at ECF 24–27 (Counts 1 and 2), ECF 29 (Count 8), ECF 34–36 (Count 14).)   The Court now considers each of these as to the remaining individual City Defendants:   NYPD Officers Jane Does 11-15 and John Does 16-20; and the City of New York.

The Court notes that these claims are nonsensical as pled because Section 1983 and *Monell* liability are not independent causes of action; rather, they require the pleading of an underlying constitutional violation or other unlawful act in order to state a federal claim against a state actor. Malicious prosecution and conspiracy claims rely on Section 1983 as the statutory vehicle for bringing federal claims against either individual officers or municipalities.  *See McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (Section 1983 claims require showing that "defendants violated [the] plaintiff's federal rights while acting under color of state law"); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (*Monell* "does not provide a separate cause of action for the failure by the government to train its employees; it extends liability" where municipal failures "led to an independent constitutional violation"); *Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205, 226–27 (E.D.N.Y. 2010) (noting that malicious prosecution claims may be brought under state law or under Section 1983); *Ng v. HSBC Mortg. Corp.*, No. 07-CV-5434 (RRM) (VVP), 2010 WL 889256, at *10 (E.D.N.Y. Mar. 10, 2020) ("there is no federal cause of action for conspiracy under common law"), *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307,

---

against the individual police officer Defendants are insufficiently plead, it orders Plaintiff to show cause as to whether the individual City Defendants were properly served instead of dismissing them at this stage.  (*See infra* page 29, "Conclusion".)

324–25 (2d Cir. 2002) (describing the components of a well-plead conspiracy claim under Section 1983).  The Court therefore considers whether Plaintiff has sufficiently alleged any Section 1983 or *Monell* claims *based* on alleged malicious prosecution or conspiracy, and concludes that he has not.

### 1. Police Officers Jane Does 11–15 and John Does 16–20

Plaintiff fails to sufficiently plead a constitutional violation as to the individual Police Officer Defendants.  The only facts he alleges as to these officers are that they were called by Ms. Sabb, they arrested Plaintiff on June 6, 2015, and a particular officer whom Plaintiff identifies as "Detective" testified at Plaintiff's state criminal trial.  (Dkt. 1 ¶¶ 71–72, 100.)[16]  Plaintiff does not allege that the arresting officers did not have probable cause at the time of his arrest; nor does he allege facts that would overcome the presumption of probable cause created by the grand jury's two indictments of him.[17]  *See Woodard v. Hardenfelder*, 845 F. Supp. 960, 967 (E.D.N.Y. 1994) (noting that "the Second Circuit has held that a grand jury indictment conclusively establishes probable cause to arrest"); *Carson v. Lewis*, 35 F. Supp. 2d 250, 260 (E.D.N.Y. 1999) (explaining that a post-arrest grand jury indictment "reinforced" the arresting officer's "probable cause" to arrest).  *Cf. Celestin v. City of New York*, 581 F. Supp. 2d 420, 433 (E.D.N.Y. 2008) ("Under New York law, the return of a Grand Jury indictment creates a presumption that probable cause existed

---

[16] The Court notes that although Plaintiff is not *pro se*, this is a liberal construction of the Complaint, which is difficult to comprehend.  The Court further notes that the Complaint does not allege or suggest that the Detective testified falsely.

[17] The closest he comes to doing so is in his Opposition Brief, where he explicitly states that he has *not* alleged any imperfections as to the investigation at the time of his arrest, and then vaguely asserts that the officers were wrong to listen to the allegation of the alleged victim. ("Plaintiff did not state that the police officers were required to conduct "a perfect investigation" prior to establishing probable cause to arrest nor did he allege that the investigation at the time of his arrest was imperfect.  Instead, Plaintiff has maintained that the police chose to listen blindly to the false allegations [of the alleged victim].")  (Dkt. 49, at 29.)

to prosecute that defendant.").  His only mention of the individual NYPD officers—found only in his Opposition Brief, not the Complaint—is that "police, civilians and prosecutors . . . lied or withheld evidence," "chose to listen blindly to the false allegations of [the alleged victim]," and "deliberately disregarded and withheld information known to them . . . and . . . deliberately disregarded the opportunity to discover more information before making the arrest because the alleged victim was a child."  (Dkt. 49, at 24, 29–30.)  Even putting aside the rule that new claims made in an opposition to a motion to dismiss do not bear on a court's assessment of a 12(b)(6) motion, *see In re Bemis Co. Secs. Litig.,* 512 F. Supp. 3d 518, 540–41 (S.D.N.Y. 2021), these vague and conclusory statements fail to satisfy even the minimal pleading standard of Rule 8.  *See White v. Monarch Pharms.*, 346 F. App'x 739, 741 (2d Cir. 2009).  Plaintiff does not indicate what evidence police officers allegedly "lied [about] or withheld" or what false allegations by the victim the officers allegedly "blindly" listened to.  Nor does Plaintiff identify any exculpatory evidence or facts that the officers would have found had they investigated further.  Furthermore, it is well established that the alleged failure to conduct further investigation does not state a claim under Section 1983.  *Buari*, 530 F. Supp. 3d at 391 (dismissing the plaintiff's claim "for failure to conduct an adequate investigation" because "there is no constitutional right to an adequate investigation, and therefore a claim for failure to investigate is not independently cognizable under Section 1983").  Nor do Plaintiff's conclusory allegations establish that the officers lacked probable cause to arrest.  "When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." *Curley v. Vill. of Suffern*, 268 F.3d 65, 69–70 (2d Cir. 2001) (internal citations omitted).  Here, the arresting officer spoke, at a minimum, to an eyewitness (Charles Nunez) and to Ms. Sabb, who spoke on behalf of the child-victim, after hearing a firsthand account of the incident from her.  Both Mr. Nunez, Ms.

Sabb, and the alleged victim knew Plaintiff well, and Plaintiff does not dispute that he was in Ms. Nunez's apartment with the alleged victim at the time of the alleged assault. Nothing in the Complaint suggests that the NYPD officers lacked probable cause to arrest Plaintiff.

Instead, the crux of the wrongdoing Plaintiff alleges as to the Police Officer Defendants seems to revolve around the acts taken by them to procure the 2017 indictment against him. The Court therefore turns to whether Plaintiff's malicious prosecution claim is sufficiently pled with respect to the Police Officer Defendants. "To prevail on a Section 1983 claim of malicious prosecution, a plaintiff must prove the four elements of malicious prosecution under New York law—(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions—as well as a violation of the plaintiff's rights under the Fourth Amendment." *Aguirre v. City of New York*, 2017 WL 4236552, at *8 (citing *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010)). "[A]n arresting officer may be held liable for malicious prosecution when that officer creates false information likely to influence a jury's decision and forwards that information to prosecutors." *Frederique v. Cnty. of Nassau*, 168 F. Supp. 3d 455, 477 (E.D.N.Y. 2016) (quoting *Mitchell v. Victoria Home*, 434 F. Supp. 2d 210, 227 (S.D.N.Y. 2006)). Here, Plaintiff's malicious prosecution claim is doubly foreclosed: first, because the Court has found (and Plaintiff seems not to contest) that the Police Officer Defendants had probable cause when they arrested him; and second, because Plaintiff does not allege that these Defendants provided any false information or evidence to the prosecutors that was used to obtain the 2017 indictment.[18]

---

[18] The Court reiterates that to the extent that Plaintiff alleges, as part of a malicious prosecution claim, that the District Attorney Defendants elicited "fabricated testimony" from S.N.

Finally, the Court addresses Plaintiff's Section 1983 conspiracy claim as to the individual police officers.  "In order to survive a motion to dismiss on a § 1983 conspiracy claim, a plaintiff must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Smulley v. Liberty Mut. Holding Co., Inc.*, No. 22-1158, 2023 WL 2494098, at *2 (2d Cir. Mar. 14, 2023) (cleaned up) (citing *Ciambriello v. Cnty. of Nassau*, 292 F.3d at 324–25). Plaintiff must also provide "some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end, augmented by some details of time and place and the alleged effects of the conspiracy."  *Rodriguez v. City of New York*, 590 F. Supp. 3d 518, 548 (E.D.N.Y. 2022).  "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim." *Ciambriello*, 292 F.3d at 324.

Here, Plaintiff makes only a "conclusory allegation" in his Fourteenth Cause of Action, for "Conspiracy."  Plaintiff's conspiracy allegation consists solely of: "Defendants acting in concert with each other did conspire to hide evidence, to omit facts pertinent to the criminal case, ACS matter and other pertinent issues in this case, and did agree to proceed with actions, omissions and malfeasance for to [sic] suppress the rights and privileges Plaintiff is entitled to."  (Dkt. 1, at ECF 34–35.)  This conclusory allegation, lacking any specifics or supporting factual allegations, is plainly insufficient.  *Rodriguez*, 590 F. Supp. 3d at 548 (finding that a conspiracy claim must be "augmented by some details of time and place and the alleged effects of the conspiracy.");

---

to support the more serious charges in the 2017 indictment, that claim is foreclosed by immunity. (*See supra* 15–17 (citing Dkt. 1, ¶¶ 83, 84); *id.* (¶ 87 ("Defendant took advantage of their role as advocate and corrupted information" from S.N., a "highly suggestible" 13-year-old.").)

23

*Ciambriello*, 292 F.3d at 324 ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim.").

With respect to the Nunez Defendants, Plaintiff similarly fails to allege how they might have been involved with the infliction of any unconstitutional injury, or any facts supporting the existence of any "meeting of the minds" between the City Defendants and the Nunez Defendants. Plaintiff also does not provide any factual details as to the role of City Defendants in the alleged conspiracy, including when, how, or to what end they allegedly conspired with the Nunez Defendants. *McCluskey v. Roberts*, No. 20-CV-4018 (JMW) (RDS) (SLC), 2022 WL 2046079 (2d Cir. June 7, 2022) (granting motion to dismiss Section 1983 conspiracy claim on grounds that the complaint "provided no details, such as the names of those involved in the alleged conspiracy").

For all of the foregoing reasons, the claims against Police Officers Jane Does 11–15 and John Does 16–20 must be dismissed.

2.   Municipal Liability

Plaintiff asserts a municipal liability claim pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), arguing that "the City has: failed to remedy the wrong; created a policy or custom under which unconstitutional practices regularly occur and even thrive; and has been grossly negligent in managing subordinates." (Dkt. 1, ¶ 168.)  However, "a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010).  As the Second Circuit has held, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an

independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original).  Once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct." *Id.*  In light of the Court's dismissal of all of Plaintiff's federal law claims against individual City Defendants and the complete dearth of allegations against any other municipal defendants not already dismissed in this decision, Plaintiff's *Monell* claim is also dismissed.

### D.  Plaintiff's State Law Claims Against the City Defendants

Having dismissed Plaintiff's only federal causes of action as to the City Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims as to these Defendants.  *See, e.g., Espinosa v. Nassau Cnty. Corr. Ctr.*, 20-CV-00223 (GRB) (VMS), 2021 WL 826168, at *4 (E.D.N.Y. Mar. 3, 2021) ("[h]aving dismissed plaintiff's § 1983 claims—the only federal cause of action—the Court finds that concerns for judicial economy, convenience, fairness and comity weigh against retaining supplemental jurisdiction over remaining state law claims.").

### III.   The Nunez Defendants

#### A.  Plaintiff's Federal Claims Against the Nunez Defendants

Again, Plaintiff's only causes of action that could be construed as arising under federal law are Count 1, 42 U.S.C. Section 1983; Count 2, "Municipal Liability"; Count 8, "Malicious Prosecution"; and Count 14, "Conspiracy."  (Dkt. 1, at ECF 24–27 (Counts 1 and 2), ECF 29 (Count 8), ECF 34–36 (Count 14).)  Each should be dismissed as to the Nunez Defendants.

As discussed, Section 1983 claims can only be brought against individuals or entities acting under color of law.  *See Washington v. Cnty. of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004) ("To establish a constitutional violation under § 1983, plaintiffs must demonstrate that (1) defendants

25

were acting under color of state law at the time of the alleged [constitutional violation]; and (2) the action was a deprivation of a constitutional or federal statutory right."). Private individuals may only be deemed state actors for purposes of Section 1983 if the private actor was "a willful participant in joint activity with the State or its agents." *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 195–96 (E.D.N.Y. 2010) (cleaned up) (ultimately quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). Moreover, "[t]he provision of information to or summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983." *Id.* at 196.

Plaintiff makes no plausible allegation that the Nunez Defendants are state actors as is required for his Section 1983 malicious prosecution claim. His allegation that Ms. Nunez, Mr. Nunez, and Ms. Sabb are "agent[s] of the District Attorney's Office, Kings County" is conclusory and without any factual support in his Complaint. Indeed, it is clear from the Complaint that these Defendants are private citizens, and Plaintiff alleges no additional facts to satisfy the standard for finding that they acted under color of law when they reported Plaintiff's alleged crimes against the child victim to the police. Specifically, Plaintiff alleges only that the Nunez Defendants interacted with police officers by calling 911 on S.N.'s behalf, to report a crime allegedly committed against her. (*Id.* ¶ 71.) *See Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999) (a legitimate request for assistance does not render a private actor "jointly engaged" in law enforcement conduct so as to amount to state action). Thus, Plaintiff utterly fails to satisfy the Section 1983 state actor requirement.

Plaintiff similarly fails to allege any agreement between the Nunez Defendants and the police to support a Section 1983 conspiracy claim. Plaintiff's conspiracy claim is therefore dismissed as inadequately plead.

Finally, Plaintiff's allegations do not rise to the level of a constitutional violation as required to state a claim under Section 1983, as Plaintiff fails to allege any substantive factual allegations in support of any claims that the Nunez Defendants violated Plaintiff's rights as guaranteed by the Constitution or federal statutes. Therefore, Plaintiff's Section 1983 claims are dismissed as to the Nunez Defendants.

### B.  Plaintiff's State Law Claims Against Nunez Defendants

Plaintiff alleges intentional and negligent infliction of emotional distress, defamation, harassment, failure to properly investigate, and fraud in his Complaint. (Dkt. 1, at ECF 27–28, 30–33.) Having dismissed all of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over these state law claims. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. §§ 1367(a), (c)).

### C.  The Nunez Defendants' SLAPP Counterclaim

In their motion to dismiss, the Nunez Defendants argue that Plaintiff's Fifth Claim ("Defamation/Slander/Libel") must be dismissed as an improper "Strategic Lawsuit Against Public Participation" ("SLAPP") lawsuit pursuant to New York Civil Rights Law 70-a. (Nunez Motion, Dkt. 41, at ECF 28–30.) The Nunez Defendants contend that the law, as codified in N.Y. C.P.L.R. ("CPLR") 3211(g), flips the burden of proof for motions to dismiss in certain circumstances (as relevant here, where "the pleading fails to state a cause of action," CPLR 3211(a)(9)), and if the SLAPP dismissal is successful, "plaintiff must reimburse the defendant's costs, expenses, and attorneys' fees." (Nunez Motion, Dkt. 41-2, at ECF 29.)

New York's anti-SLAPP law was enacted in 1992 to "broaden[] the protection of citizens facing litigation arising from their public petition and participation" in public meetings, especially from defamation lawsuits. *Mable Assets, LLC v. Rachmanov*, 146 N.Y.S.3d 147, 149 (N.Y. App. Div. 2021). "On November 20, 2020, New York amended its existing anti-SLAPP law to broaden the scope of the law and provide greater protections to defendants." *Nat'l. Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 430–31 (S.D.N.Y. 2021) (citing NYCRL §§ 70-a, 76-a; N.Y. CPLR 3211(g), 1312(h)).

The Court is dubious as to whether New York's anti-SLAPP law applies in federal court. The Second Circuit has yet to squarely address this issue. In *La Liberte v. Reid*, the Second Circuit did find that California's anti-SLAPP law[19] is superseded in federal court by the pleading burden established in Rule 12(b)(6) and Rule 56, the summary judgment standard. 966 F.3d 79, 85–89 (2d Cir. 2020). As is particularly relevant here, the Court found that the moving defendant could not recover attorneys' fees based on the district court's Rule 12(b)(6) dismissal because California's anti-SLAPP Act "does not purport to make attorney's fees available to parties who obtain dismissal by other means." *La Liberte*, 966 F.3d at 88–89 (quoting *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1337 n.5 (D.C. Cir. 2015)). Applying *La Liberte*, numerous district courts in this Circuit have similarly held that because the New York anti-SLAPP law's heightened pleading standards conflict with Rules 12 and 56, they cannot be invoked in federal court. *See, e.g.*, *Nat'l Acad. of Television Arts & Scis., Inc.*, 551 F. Supp. 3d at 432 ("New York's anti-SLAPP law imposes a different, and higher, burden on the plaintiff at the pleading stage than the Federal Rules of Civil Procedure."); *Carroll v. Trump*, 590 F. Supp. 3d 575, 585 (S.D.N.Y. 2022); *Maron*

---

[19] California's anti-SLAPP law, *inter alia*, permits defendants to file within 60 days a "special motion to strike" that must be granted unless the plaintiff establishes that there is a probability he or she will prevail on the claim. CAL. CIV. PROC. § 425.16.

*v. Legal Aid Society*, 605 F. Supp. 3d 547, 567 n.11 (S.D.N.Y. 2022); *Prince v. Intercept*, No. 21-CCV-10075 (LAP), 2022 WL 5243417, at *18 (S.D.N.Y. Oct. 6, 2022); *cf. Goldman v. Reddington*, No. 18-CV-3662, 2021 WL 4755293, *4 n.2 (E.D.N.Y. Apr. 21, 2021) (distinguishing California anti-SLAPP statute found inapplicable in federal court from New York's anti-SLAPP statute and declining to address whether the New York statute conflicts).

Ultimately, because the Court grants the Nunez Defendants' motion to dismiss pursuant to Rule 12(b)(6), the undersigned declines to address whether New York's recently amended anti-SLAPP statute conflicts with the Federal Rules of Civil Procedure.

## IV.   LEAVE TO AMEND

Based on this Court's review of Plaintiff's submissions, they have not sought leave to amend despite ample opportunity to do so. (*See* 9/9/2021 Docket Order, 10/15/2021 Docket Order, Dkt. 49 (failing to seek leave to amend).)  Even if they had, however, the Court would deny that request given the numerous opportunities that Plaintiff has had to amend his complaint, including after Plaintiff was on notice of Defendants' anticipated motion-to-dismiss arguments, and because it is clear to the Court that any amendment would be futile.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).

### CONCLUSION

For the reasons explained above, City Defendants' and Nunez Defendants' motions to dismiss are granted, and all of Plaintiff's claims are dismissed with prejudice against Defendants DA Gonzalez, the ADAs John and Jane Does, the City of New York, and Yadira Nunez, Charles Nunez, and Ayanna Sabb, without leave to amend.  Further, as stated *supra* notes 10 and 15, the Court orders Plaintiff to show cause within twenty-one (21) days of this Order why the Court should not dismiss the case as to Police Officers Jane Does 11 through 15 and John Does 16

through 20 for failure to properly serve them pursuant to the requirements of Fed. R. Civ. Proc. 4(m).  Additionally, in light of Plaintiff's consent to dismiss the Office of Court Administration (Dkt. 48), OCA's motion to dismiss is found moot and the Clerk of Court is respectfully directed to terminate the Office of Court Administration as a party in this case.  The Clerk of Court is respectfully directed to enter judgment accordingly with all of the above.


                                        SO ORDERED.


                                        _/s/ Pamela K. Chen_____
                                        Pamela K. Chen
                                        United States District Judge

Dated: March 31, 2023
         Brooklyn, New York